222                October 3, 2013                No. 43

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of N. R. L.,
a Youth.

STATE OF OREGON,
*Respondent on Review*,

*v.*

N. R. L.
*Petitioner on Review.*

(CC J090305; CA A144789; SC S060355)

En Banc

On review of a decision of the Court of Appeals.*

Argued and submitted March 11, 2013, at Lewis & Clark College of Law, Portland, Oregon.

Christa Obold-Eshleman, of Youth, Rights and Justice, Portland, argued the cause and filed the brief for petitioner on review.

Cecil A. Reniche-Smith, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Rankin Johnson IV, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Margaret Garven, Portland, filed a brief for *amicus curiae* The National Crime Victim Law Institute. With her on the brief was Amy C. Liu.

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
* Appeal from Washington County Circuit Court, Michele C. Rini, Judge. 249 Or App 321, 277 P3d 564 (2012).

**WALTERS, J.**

In this juvenile case, we consider whether Article I, section 17, of the Oregon Constitution, which requires a trial by jury in "all civil cases," applies to a restitution determination in a juvenile delinquency proceeding. Youth argues that he is entitled to a jury trial because recent constitutional and statutory amendments have transformed the juvenile restitution statute, ORS 419C.450, into a civil device through which victims of crime can recover monetary damages for their injuries. We hold that a restitution determination pursuant to ORS 419C.450 is not civil in nature and that Article I, section 17, therefore does not require a jury trial in youth's case. For the reasons set out below, we affirm the judgment of the trial court and the decision of the Court of Appeals, which similarly had rejected youth's argument. *State v. N. R. L.*, 249 Or App 321, 277 P3d 564 (2012).

The pertinent facts are not in dispute. Youth was adjudicated delinquent after admitting that he unlawfully had entered a warehouse and damaged property—acts that, if committed by an adult, would constitute second-degree burglary and first-degree criminal mischief. Before the dispositional hearing, youth moved for a jury trial, arguing that, under Article I, section 17, he was entitled to have a jury determine the amount of restitution that he should be required to pay. The juvenile court denied youth's motion and entered a judgment ordering youth to pay $114,071.13 in restitution.

Youth appealed to the Court of Appeals, again arguing that he was entitled to a jury trial on the issue of the amount of restitution that he should be required to pay. Youth acknowledged that restitution traditionally has been understood to be a criminal sanction, but he contended that the enactment of Article I, section 42, of the Oregon Constitution, along with recent amendments to the criminal and juvenile restitution statutes, had transformed that sanction into a civil recovery device whose primary purpose is compensation for victims. A claim for restitution, youth argued, is best understood as a claim for monetary damages—a claim that is indisputably civil and that therefore requires compliance with Article I, section 17.

The Court of Appeals rejected youth's argument, holding that a juvenile offender's obligation to pay restitution is "penal, not civil, in nature." *N. R. L.*, 249 Or App at 332. The court first explained that, because the juvenile delinquency code did not exist at the time that Article I, section 17, was adopted, and because that code is neither criminal nor civil in the traditional sense, juveniles in delinquency proceedings generally are not entitled to a jury trial. *Id.* at 324. The court then considered and rejected youth's argument that, notwithstanding that history, the particular action of imposing restitution entitles youth to a jury trial. Restitution, the court explained, continues to serve deterrent and rehabilitative purposes and is not a form of civil recovery for the victim:

> "Because we conclude that the amendments to the statute did not affect the predominately penal characteristics of the restitution award—and instead arguably reemphasized the role of restitution in 'correcting *** behavior' and impressing upon the offender 'the seriousness and cost of his offense,' as recognized in *Hart* *** we conclude that [the] juvenile court's order of restitution in a juvenile proceeding is penal, not civil, in nature."

*Id.* at 332.

Youth petitioned for review, which we granted to determine whether Article I, section 17, applies to a juvenile restitution determination under ORS 419C.450. We review the juvenile court's denial of youth's motion for a jury trial for legal error. *See State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999) (stating standard).

Article I, section 17, provides that, "[i]n all civil cases the right of Trial by Jury shall remain inviolate."[1] This court has emphasized that "the constitutional right of trial by jury is not to be narrowly construed." *State v. 1920 Studebaker Touring Car et al.*, 120 Or 254, 263, 251 P 701 (1927). Rather, Article I, section 17, guarantees a right to jury trial for all

---

[1] Article VII (Amended), section 3, provides, in part, that, "[i]n actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved ***." Youth does not assert a right to jury trial under that section, and we therefore do not discuss it. For the same reason, we also do not discuss whether youth has a right to jury trial under Article I, section 11, which guarantees right to trial by jury in all criminal prosecutions.

civil claims or requests for relief, absent a showing that the nature of the particular claim or request at issue is such that it would have been tried to a court without a jury at common law. *M.K.F. v. Miramontes*, 352 Or 401, 425, 287 P3d 1045 (2012). The fact that a particular claim or request was not judicially recognized at the time that the constitution was adopted or that such a claim or request was created by the legislature thereafter does not necessarily mean that the Article I, section 17, does not apply; it is the nature of the claim or request that is determinative. *See Miramontes*, 352 Or at 413 (stating principle); *see also 1920 Studebaker*, 120 Or at 271 (Article I, section 17, applies to claim under Prohibition-era forfeiture statute, even though statute did not exist when constitution was enacted). The question before us, therefore, is whether a restitution determination in a juvenile delinquency proceeding pursuant to ORS 419C.450 is civil in nature.

This court previously has addressed a comparable question. In *State v. Hart*, 299 Or 128, 699 P2d 1113 (1985), this court held that a restitution determination in an adult criminal prosecution pursuant to ORS 137.106 (1985), *amended by* Or Laws 2003, ch 670, § 1, was not civil in nature and that Article I, section 17, did not grant a right to a jury trial in such a proceeding.[2] The court acknowledged that ORS 137.106 (1985) embodied a "peculiar blend of both civil and criminal law concepts," but determined that restitution under that statute was "not intended to be equivalent or alternative to a civil award." *Id.* at 138. The court reasoned that the theory behind restitution ultimately is "penological: It is intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim."

---

[2] In *Hart*, the defendant also asserted a right to jury trial under Article I, section 11, which grants a jury trial right in "all criminal prosecutions." This court agreed that the defendant constitutionally was entitled to have a jury decide all the elements of the crime for which he was convicted, but determined that that principle did not necessitate a jury trial in the defendant's restitution hearing. The court explained that, although the seriousness of the injury inflicted by the defendant was an element of the crime with which the defendant was charged, the monetary amount of the medical and other expenses associated with that injury was not. Thus, although the amount of the restitution order "might be termed an element of sentencing, it is not an element of the crime of assault," and the defendant was not entitled to a jury trial under Article I, section 11. 299 Or at 137.

*Id.* (internal quotation marks omitted). Restitution is not, the court explained, intended to serve a primarily compensatory function or to compensate victims fully for their losses. The amount of restitution to which a victim might be entitled "does not automatically translate into what the court may require the defendant to pay"; instead, the court must "mitigate[]" the amount of restitution imposed, based on the financial resources of the defendant, his or her ability to meet the installment payments, and the rehabilitative effect that restitution may have. *Id.* at 135-36. Restitution must be understood, the court concluded, as "an aspect of criminal law, not as a quasi-civil recovery device." *Id.* at 139 (quoting *State v. Dillon*, 292 Or 172, 180, 637 P2d 602 (1981)).

Youth argues that ORS 419C.450, the juvenile restitution statute, differs from ORS 137.106 (1985), the statute at issue in *Hart*, in that a restitution determination under the juvenile code is not an "aspect of criminal law" but is instead a civil recovery device. There are two aspects of the juvenile restitution statute that may distinguish it from the adult restitution statute that this court analyzed in *Hart*. First, a restitution hearing under ORS 419C.450 occurs in the context of a juvenile delinquency, rather than an adult criminal, proceeding. Second, as presently configured, ORS 419C.450 may be different in purpose and function from the adult restitution statute that the court analyzed in *Hart*.[3]

We take each of those considerations in turn and begin with the fact that juvenile delinquency proceedings are in many ways different from adult criminal proceedings. In *State v. Reynolds*, 317 Or 560, 857 P2d 842 (1993), this court described the differences in the two regimes as they existed in 1993 and determined that the jurisdictional phase of a juvenile proceeding under ORS 419.476(1)(a) is not a "criminal prosecution" within the meaning of Article I, section 11, of the Oregon Constitution. *Id.* at 563. Therefore,

---

[3] ORS 419C.400(1) provides, in part, that juvenile delinquency hearings "shall be held by the court without a jury." The state suggests that youth is challenging that statute's constitutionality and urges us to apply the principle of statutory construction that "[e]very statute is presumed to be constitutional, and all doubt must be resolved in favor of its validity." *Jehovah's Witnesses v. Mullen et al*, 214 Or 281, 293, 330 P2d 5 (1958). Although that is true, a statute in conflict with the constitution cannot stand. *See 1920 Studebaker*, 120 Or at 263 (constitution grants right to jury trial even though statute permits trial to court).

the court held, the right to a jury trial in a "criminal prosecution" as set out in that statute does not attach to such a juvenile proceeding. *Id.* at 575. That does not mean, however, that juvenile delinquency proceedings do not have criminal aspects that may make the imposition of restitution criminal rather than civil in nature for purposes of Article I, section 17.[4]

ORS 419C.450—the juvenile restitution statute—applies when a juvenile commits "an act that is a violation, or that if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city." ORS 419C.005(1). *See State v. McCullough*, 347 Or 350, 359, 220 P3d 1182 ("[j]uveniles can engage in conduct constituting a crime, even though they may not be held criminally responsible in certain cases"). On a finding that the victim of a crime has suffered injury, loss, or damage, the trial court is required to impose restitution "in addition to any other sanction it may impose." ORS 419C.450(1)(A). Thus, the imposition of restitution in a juvenile delinquency proceeding constitutes a sanction for conduct that is criminal in nature. Accordingly, restitution in a juvenile proceeding may be understood, as the court understood the restitution imposed in *Hart*, as an "'aspect of criminal law.'" 299 Or at 139 (quoting *Dillon*, 292 Or at 180).

Youth argues, however, that restitution that is imposed in a juvenile proceeding is better understood as a means of compensating or restoring the person that a juvenile has injured. In other words, youth contends that restitution under ORS 419C.450 is a civil recovery device that, under current

---

[4] Although the civil versus criminal distinction is a central organizational feature of our legal system, that distinction has changed over time. Many "hybrid" legal structures currently exist, in addition to restitution, that borrow from both traditions—for example, punitive damages in civil cases, statutory civil penalties, civil forfeiture, and civil fines for violations of federal and state regulations. *See, e.g.*, Carol S. Steiker, *Punishment and Procedure: Punishment Theory and the Criminal-Civil Procedural Divide*, 85 Geo LJ 775, 777, 782 (1997) (civil-criminal distinction "deeply embedded" in Anglo-American law, but has never been static, and today is blurred by the increasing number of "hybrid" legal institutions and practices); Aaron Xavier Fellmeth, *Civil and Criminal Sanctions in the Constitution and Courts*, 94 Geo LJ 1, 2, 4 (2005) (few distinctions are more fundamental and consequential, but today the distinction is blurred). As this case illustrates, "hybrid" legal structures leave courts with the difficult challenge of determining the application of constitutional rights that attach only to civil cases or, more commonly, to criminal ones.

law, is different in purpose and function from the adult restitution statute that this court analyzed in *Hart*.

Youth explains that, prior to amendment in 2003, ORS 419C.450 (2001) provided judges with the *option* of imposing restitution as a sanction where a youth offender had "caused another person any physical, emotional or psychological injury or any loss of or damage to property." ORS 419C.450(1)(a)(2001), *amended by* Or Laws 2003, ch 670, § 4. The legislature explicitly encouraged the use of restitution in those instances and created a rebuttable presumption that "the obligation to make such restitution is in the best interest of the youth offender as well as of the victim and society." *Id*. However, the imposition of restitution was not mandatory, and, in determining whether restitution was an appropriate sanction, the court was required to consider whether it would contribute to the rehabilitation of the youth offender. ORS 419C.450(4)(2001)(court "shall take into account" the financial resources of the youth offender, the ability of the offender to pay on an installment basis, and the rehabilitative effect on the youth offender).

In 2003, following the adoption of Article I, section 42, of the Oregon Constitution,[5] the legislature passed Senate Bill 617 and amended ORS 419C.450. *See* Or Laws 2003, ch 670, §§ 1 and 4. SB 617 made restitution in juvenile delinquency proceedings mandatory rather than discretionary. ORS 419C.450 now provides that the district attorney "shall investigate and present to the court" any evidence concerning the nature and amount of the injury or damage and that, if the court finds from the evidence presented that a victim suffered injury, loss, or damage, the court "shall" include a restitution requirement in the judgment. In that judgment, the court must either specify the "specific amount that equals the full amount of the victim's injury, loss or damage" or provide that a specific amount will be established by a supplemental judgment within 90 days. ORS 419C.450(1)(a)(A), (B).

The only flexibility that the juvenile court retains is in determining how a mandatory restitution judgment is to be carried out. Under ORS 419C.450(3)(a), a court may

___

[5] Article I, section 42, grants certain rights to crime victims in both adult and juvenile delinquency proceedings.

delay the enforcement of a restitution judgment only if it finds that the youth offender is unable to pay. If the court so finds, then the court or a designated "supervising authority" may establish a payment schedule, taking into consideration various criteria that include "the rehabilitative effect on the youth offender of the payment of restitution and the method of payment." ORS 419C.450(3)(a).[6]

Similarly, the juvenile court is authorized to grant a motion for satisfaction of judgment under limited circumstances. A person who owes restitution may file a motion for satisfaction of the judgment if, among other criteria, at least 50 percent of the monetary obligation is satisfied or at least 10 years have passed since the original judgment was entered. ORS 419C.450(5). When a person files such a motion, the district attorney must notify the victim, who may file an objection. ORS 419C.450(6). If the victim does not object, the court "shall hold a hearing" and may enter an order granting a full or partial satisfaction of the judgment "if the allegations in the affidavit *** are true and failure to grant the motion would result in an injustice."[7] ORS 419C.450(7). In determining whether an injustice would result, the court must again consider a number of criteria, which include the rehabilitative effect on the defendant. *Id.*[8]

---

[6] ORS 419C.450(3)(a) provides that the court may establish a payment schedule, taking into consideration the following criteria:

"(A) The availability to the youth offender of paid employment during such time as the youth offender may be committed to a youth correction facility;

"(B) The financial resources of the youth offender and the burden that payment of restitution will impose, with due regard to the other obligations of the youth offender;

"(C) The present and future ability of the youth offender to pay restitution on an installment basis or on other conditions to be fixed by the court; and

"(D) The rehabilitative effect on the youth offender of the payment of restitution and the method of payment."

[7] ORS 419C.450 does not explicitly state what happens in the event that the victim *does* object to the motion.

[8] ORS 419C.450(7) requires a judge to consider:

"(a) The financial resources of the defendant and the burden that continued payment of restitution will impose, with due regard to the other obligations of the defendant;

"(b) The ability of the defendant to continue paying restitution on an installment basis or under other conditions to be fixed by the court; and

"(c) The rehabilitative effect on the defendant of the continued payment of restitution and the method of payment."

Youth argues that the changes described above rendered ORS 419C.450 civil in nature because, now, the primary purpose of ORS 419C.450 is to compensate the victim, rather than to rehabilitate the juvenile or achieve other "traditional penal ends." Youth focuses in particular on the shift from a discretionary to a mandatory restitution regime as evidence of that change in purpose. Youth also suggests that restitution under ORS 419C.450 is civil in nature because it has become a "right" that a victim may "personally enforce *** even if the state does not do so because of a conflict between the victim's interest and the public's interest." Youth cites ORS 147.500 to 147.550 as providing the procedural mechanism by which a victim may assert such a claim.

Youth is correct that restitution under ORS 419C.450 serves a compensatory purpose. Although a judgment for restitution is in favor of the state and may be enforced only by the state, the funds paid pursuant to the judgment must be disbursed to the victim. ORS 419C.450(4) ("Judgments entered under this subsection are subject to ORS 18.048"); ORS 18.048(2)(b) ("If restitution *** is awarded, [judgment must include] the name and address of the person to whom the court should disburse payments, unless the victim requests that this information be exempt from disclosure in the public record."). The legislature also requires that such payments be credited toward any sum that a victim obtains if the victim brings a civil action for damages. ORS 419C.450(2).

Youth is incorrect, however, in suggesting that, because a crime victim has an enforceable right to restitution, a restitution determination is analogous to a private right of action for damages. Article I, section 42, grants crime victims the right to "receive prompt restitution," and the provisions of ORS 147.500 to 147.550 effectuate that right. ORS 147.504(1). However, those statutory provisions do not permit a victim to assert a claim for restitution *against a juvenile offender.*

First, in a proceeding under ORS 419C.450 in which restitution may be imposed, crime victims are not parties. The district attorney, on behalf of the state, investigates and presents evidence concerning the nature and amount of the

victim's injury or damage. ORS 419C.450(1)(a). When restitution is imposed, "[t]he judgment is in favor of the state and may be enforced only by the state ***."[9] ORS 419C.450(4).

Second, although a victim who *is denied* a constitutional right to "receive prompt restitution" may make a "claim," ORS 147.515, that claim is not a claim for damages.[10] If a victim makes a claim that the victim has been denied a constitutional right to "receive prompt restitution," then the trial court determines whether that claim is facially valid. If the trial court deems the claim to be facially valid, it must issue an order to "show cause why the victim should not be granted relief," ORS 147.517(2), and hold a hearing on the victim's claim, ORS 147.530. At the conclusion of that hearing, the trial court must make factual findings and issue an order granting or denying the relief requested. ORS 147.530(2), (4), and (5). Thus, a victim's claim that he or she was denied the right to "receive prompt restitution" is a claim that the trial court did not properly discharge its constitutional obligations; it is not a claim to recover damages from the youth offender and, therefore, is not analogous to a private right of action.[11] *See State v. Algeo*, 354 Or 236, ___ P3d ___ (2013) (considering a claim that trial court did not properly discharge its constitutional obligation). A victim who seeks damages from a youth offender has an *independent* right to bring a *civil* action for damages against the youth offender. Any restitution that a youth offender pays must be credited against a judgment in the victim's favor in such an action. ORS 419C.450(2).

Youth also is incorrect that, because courts are now mandated to impose restitution, whether or not it will serve deterrent and rehabilitative purposes, the "primary purpose" of restitution under ORS 419C.450 is to compensate victims.

---

[9] ORS 419C.450(4) also provides that a restitution judgment is subject to ORS 18.048, which defines the procedures for entry and enforcement of judgments in criminal actions that contain money awards. That statute provides that "[a] judgment in a criminal action that contains a money award is a judgment in favor of the state and may be enforced only by the state." ORS 18.048(5).

[10] A crime victim also may allege a violation of a constitutional right under Article I, section 42, "by a mandamus proceeding if no case is pending ***." Or Const, Art I (Amended), § 42(3)(b); ORS 147.504(1).

[11] We do not decide in this case whether a victim would have a right to a jury trial in making such a claim or whether an offender affected by such a claim would have a right to a jury trial. Here, the victims did not file a claim asserting that their constitutional rights were violated.

In *Hart*, this court described restitution as a flexible sentencing tool, utilized when its imposition would further the penological purposes of rehabilitation and deterrence. *See* 299 Or at 138 ("[R]estitution is to be ordered only as it is relevant in correcting defendant's behavior and as a step to accomplishing the traditional goals of sentencing such as rehabilitation of the defendant and deterrence to impress upon the defendant the seriousness and cost of his offense."). It is true that ORS 419C.450 no longer retains either that flexibility or that explicit emphasis on rehabilitation. Rehabilitation now appears only as a criterion that may inform a judge's decision to delay enforcement of a restitution sanction where a youth is unable to pay[12] and as a factor that the judge must consider in a hearing for satisfaction of judgment.[13] However, we disagree with the conclusion that youth draws from that change in emphasis for several reasons.[14]

As an initial matter, restitution remains a sanction imposed by the juvenile court as a result of a youth's violation of the law. The fact that imposition of that sanction is now mandatory rather than discretionary serves to highlight its penal nature. We find it significant that, in granting crime victims the "right to receive prompt restitution," Article I, section 42, does not distinguish between juvenile delinquency and adult criminal proceedings or between juvenile and adult offenders. It defines the term "convicted criminal" to include "a youth offender in juvenile court delinquency proceedings," and it defines "criminal defendant" to include "an alleged youth offender in juvenile court delinquency proceedings."[15]

---

[12] ORS 419C.450(3)(a)(D) provides that "[t]he rehabilitative effect on the youth offender of the payment of restitution and the method of payment" is one of the criteria that may inform a judge's decision to delay the enforcement of restitution where the youth is unable to pay.

[13] ORS 419C.450(7) provides that the court may enter an order granting a full or partial satisfaction "if the allegations in the affidavit supporting the motion are true and failure to grant the motion would result in an injustice" based on three criteria, including rehabilitative effect.

[14] In this case, youth does not contend that restitution has become a "criminal prosecution" for purposes of Article I, section 11, and we do not consider that question.

[15] Article I, section 42(6), provides, in part:

"(a) 'Convicted criminal' includes a youth offender in juvenile court delinquency proceedings.

"(b) 'Criminal defendant' includes an alleged youth offender in juvenile court delinquency proceedings."

We also note that contemporary restitution statutes always have served a combination of civil and criminal law purposes. *See Hart*, 299 Or at 136, 138 (restitution statute presents "a peculiar blend of both civil and criminal law concepts," and courts, in applying that statute, must "balance the offender's economic circumstances, the victim's interest in the recovery and the punitive and reformative goals * * *"). That combined purpose historically has been true as well: Before the conceptual separation of civil and criminal law, it was "standard practice to require an offender to reimburse the victim or his family for any loss caused by the offense," and "[t]he primary purpose of such restitution was not to compensate the victim, but to protect the offender from violent retaliation by the victim or the community." *Hart*, 299 Or at 132. As the division between civil and criminal law developed, the victim's right to compensation became incorporated into civil law; however, restitution continued to be available on a limited basis in the Anglo-American system as a penalty that served a penal purpose. *Id*.

Finally, the legislative history that the parties cite reveals a legislative view that "compensation for the victim" is a tool to achieve penal and rehabilitative ends.[16] When the legislature amended the juvenile restitution statutes, it determined that a mandatory rather than a discretionary restitution regime would better serve the penal ends that it wished to achieve.

We conclude that a restitution determination pursuant to ORS 419C.450 is not civil in nature. We therefore hold that Article I, section 17, did not grant a right to jury trial in this case.

---

[16] Senate Bill (SB) 617 (2003), which was the genesis for the 2003 amendments to ORS 419C.450, was referred to the House Committee on the Judiciary. In introducing the bill at the public hearing, Attorney General Hardy Myers stated that "[t]his bill in effect seeks to fulfill the constitutional commitment that Oregon has made to crime victims" under Article I, section 42. Tape Recording, House Committee on Judiciary, SB 617, May 20, 2003, Tape 199, Side A (statement of Attorney General Hardy Myers). Myers further explained that offenders "should be under strict legal obligation to make a full restitution to victims" and that the task force believed that "such payment is also an important mechanism for offender rehabilitation and reintegration as a productive and law abiding member of our society." *See also id.* (according to the Oregon Crime Victims' Needs Assessment, "offender accountability is the area within the criminal justice system most needing improvement").

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.