Argued and submitted October 28, reversed and remanded December 22, 2021, petition for review allowed April 7, 2022 (369 Or 507) See later issue Oregon Reports

In the Matter of S. J.,
aka B. G. J., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

E. J.,
aka E. L. J.,
*Appellant.*

Multnomah County Circuit Court
19JU08234;
Petition Number 113871;
A176088

504 P3d 1262

Mother appeals from a juvenile court order denying her motion *in limine* to prohibit the Department of Human Services (DHS) from using a psychological evaluation that was created when she was a ward of the court as evidence against her in a dependency matter involving her child. Invoking ORS 419A.255 and *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 20 P3d 837, *rev den*, 332 Or 518 (2001), mother argues that material is privileged. The state concedes that the juvenile court erred by authorizing disclosure under ORS 419A.255, but argues that the "right for the wrong reason" doctrine allows affirmance because the information from when mother was a ward of the court can be used under the authority of ORS 409.225. *Held*: ORS 419A.255 creates a privilege that applies to "history and prognosis" information found in either the supplemental confidential file or the record of the case. That privilege cannot be defeated by disclosing duplicate materials in the possession of DHS. As the proponent of the records, DHS had the burden to show that the records were not privileged. Because DHS failed to show that the information at issue was not privileged, the Court of Appeals reversed the juvenile court's order.

Reversed and remanded.

Beth A. Allen, Judge.

Christa Obold Eshelman argued the cause and filed the brief for appellant.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Reversed and remanded.

## JAMES, J.

In this juvenile dependency case, mother was formerly a ward of the court when she was a juvenile. Now, years after mother's wardship ended, Department of Human Services (DHS) asserted dependency jurisdiction over mother's child, S. DHS sought to compel mother to submit to a psychological evaluation, and as a component of that anticipated evaluation, DHS sought to disclose, to the psychologist, a report from mother's juvenile file. Mother moved, *in limine*, to prohibit DHS's use of the report "as evidence" against her. The trial court denied mother's motion, ruling that disclosure of the report was permissible under ORS 419A.255(3)(b).

On appeal, DHS argues that because the report would only be provided to a psychologist, it is premature to conclude that it would be used as "evidence" against mother, and therefore, mother's challenge to the juvenile court ruling is not ripe for review. Alternatively, on the merits, DHS concedes that the juvenile court erred when it authorized the disclosure under ORS 419A.255(3)(b) but asks us to affirm the court's order under the "right for the wrong reason" doctrine by finding that the disclosure is permitted by ORS 409.225. For the reasons that follow, we reverse and remand.

We review the juvenile court's construction and application of a statute as a question of law. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Furthermore, we review the juvenile court's legal conclusions for errors of law, but we are bound by the court's findings of historical fact so long as there is evidence to support them. Where findings are not made on disputed issues of fact and there is evidence from which those facts could be decided more than one way, we will presume that they were decided in a manner consistent with the juvenile court's ultimate conclusion. *State v. S. T. S.*, 236 Or App 646, 654-55, 238 P3d 53 (2010).

The facts in the case are largely procedural and not in dispute. The following facts are taken from the juvenile referee and the juvenile court's findings. The referee

found that on November 6, 2019, DHS filed a petition alleging that mother's children were endangered. This information was based on a report that listed "Prior Involvement" incidents that included events occurring between 2006 and 2013 listed under the maternal grandfather's case name while mother was a ward of the court. Specifically, mother's wardship was between 2009 and 2016. She gave birth to S in 2014, and mother was a ward of the court for the first 16 months of S's life. Mother has another daughter who is not the subject of this matter. In February 2020, mother admitted that her children were endangered and subject to the court's jurisdiction. In November 2020, mother admitted that the children were endangered because of "*an ongoing pattern [of] traumatic events she has suffered throughout her life* \*\*\* lead[ing] to an inability to recognize unsafe individuals and chaos, which interfere with her ability to safely parent the children." On November 25, 2020, the referee ordered mother to participate in a psychological evaluation and begin any treatment recommended by that evaluation. DHS had records in its possession about mother from when she was a ward of the court that it wanted to provide to the examining psychologist for consideration during that evaluation.

On January 8, 2021, mother filed a motion *in limine* with the juvenile referee to deny disclosure of "all records and information that relate[d] to [her] history and prognosis appearing in the supplemental confidential file (SCF) or record of her own case (ROC) as a ward of court based on the limits in ORS 419A.255, ORS 419B.035, ORS 409.225, and DHS regulations." Mother moved the court to order that the privileged and confidential information not be disclosed, including the psychological evaluation conducted when she was a ward of the court. The juvenile referee ordered that DHS records compiled during mother's wardship that were relevant for understanding her past trauma were to be submitted for an *in camera* inspection. The court further determined that it would release those records to the psychologist if they were necessary for the psychologist to view and rely upon in forming a diagnosis and recommendation for services. The referee also set other criteria for the custody of the records if they were to be released.

Mother appealed the referee's order to the juvenile court. That court denied the motion and held that "the report at issue" could be "'used as evidence' against Mother in the juvenile court proceeding concerning her." The court construed ORS 419A.255(3)(b) to provide authority for using the report because "it is in connection with a proceeding in a juvenile court concerning her." Thus, the court reasoned that the privilege did not apply. Notably, the juvenile court did not make a finding about whether or not the "report at issue" was "history and prognosis" information contained in the record of the case or the supplemental confidential file. However, the court's construction suggested that the report was privileged under the statute but qualified for the exception that it identified in ORS 419A.255(3)(b). In the juvenile court, mother moved for a stay pending appeal. In response, DHS specified the records at issue, including "summaries created by the ODHS permanency worker regarding Mother's time as a ward of the Court, and a prior psychological evaluation of the Mother from 2015." The juvenile court denied mother's motion for a stay pending appeal and ordered the preparation of a protective order to ensure that "the previous evaluation is for the current evaluator's eyes only until further order of the court, and any addendum that results from the review by the evaluator may not be released until further order of the court." This appeal followed.

We begin with DHS's argument that the issue in this case is not ripe for review. Ripeness "depends on 'whether the controversy involves present facts as opposed to hypothetical future events.'" *Rowden v. Hogan Woods, LLC*, 306 Or App 658, 679, 476 P3d 485 (2020) (quoting *Menasha Forest Products Corp. v. Curry County Title*, 234 Or App 115, 120, 227 P3d 770 (2010), *rev'd in part on other grounds*, 350 Or 81, 249 P3d 1265 (2011)). Here, the trial court's order permitted production of the records to a psychologist. The production was not benign—it was a tool to be used in litigation and cannot be said to involve a "hypothetical future event." Further, mother is asserting a privilege against disclosure. If mother is correct, and the material is privileged, such protections would be meaningless if they cannot be enforced until the improper disclosure is turned into "evidence." In short, we conclude the issue is ripe.

Turning to the statutes at issue, mother argues that ORS 419A.255 grants a privilege that should apply to the records at issue from her wardship thereby making them inaccessible to DHS for use in the dependency matter involving her child. ORS 419A.255 is found in the juvenile code and pertains to the juvenile court's records. Mother claims that ORS 419A.255(2) and (3) provide authority for the privilege she asks this court to recognize. Subsection (2)(a) codifies the kinds of materials that are subject to that privilege:

> "Reports and other material relating to the child, ward, youth or youth offender's history and prognosis in the record of the case or the supplemental confidential file are privileged and, except at the request of the child, ward, youth or youth offender, shall be withheld from public inspection except that inspection is permitted as set forth in subsection (1)(b) of this section and paragraph (b) of this subsection. The offer or admission of reports and other material in the record of the case or the supplemental confidential file as exhibits in a hearing or trial does not waive or otherwise change the privileged status of the reports and other material, except for purposes of the hearing or trial in which the reports and other material are offered or admitted. Once offered as an exhibit, reports and other material relating to the child, ward, youth or youth offender's history and prognosis that were maintained in the supplemental confidential file become part of the record of the case but are subject to paragraph (e) of this subsection."

ORS 419A.255(2)(a) (2019).[1]

Subsection (3) sets forth the circumstances in which this privilege applies and the exceptions to it:

> "Except as otherwise provided in subsection (5) of this section, no information appearing in the record of the case or in the supplemental confidential file may be disclosed to any person not described in subsections (1)(b) and (2)(b) of this section, respectively, without the consent of the court, except for purposes of evaluating the child, ward, youth or youth offender's eligibility for special education as provided in ORS chapter 343, and no such information may

---

[1] ORS 419A.255 was recently amended by Or Laws 2021, ch 489, § 52, but those changes do not alter the analysis here.

be used in evidence in any proceeding to establish criminal or civil liability against the child, ward, youth or youth offender, whether such proceeding occurs after the child, ward, youth or youth offender has reached 18 years of age or otherwise, except for the following purposes:

"(a) In connection with a presentence investigation after guilt has been admitted or established in a criminal court.

"(b) In connection with a proceeding in another juvenile court concerning the child, ward, youth or youth offender or an appeal from the juvenile court."

ORS 419A.255(3) (2019).

Both parties agree that the juvenile court erred by interpreting ORS 419A.255(3)(b) as authority for granting DHS access to mother's records. We agree. The juvenile court reasoned that

"the statute makes clear that regardless whether 'the child' has reached the age of majority, the ROC [(record of the case)] and SCF [(supplemental confidential file)] may be used in a proceeding in another juvenile court (not the same juvenile court that had jurisdiction over 'the child') if it concerns 'the child.' In other words, a person who was once a 'child' as designated by the court for juvenile proceedings, continues to be denominated as 'child' regardless of attaining the age of majority. As it pertains to this case, Mother, now an adult, is 'the child' and evidence concerning her may be used in this juvenile hearing because it is in connection with a proceeding in a juvenile court concerning her."

This interpretation is troubled by the plain language of the statute because mother is not "the child" that concerns the juvenile court in this statute. Paragraph (3)(b) reads plainly that it applies "[i]n connection with a proceeding in another juvenile court concerning the child, ward, youth or youth offender or an appeal from the juvenile court." This case does not concern mother in these terms: it concerns her daughter. Similarly, ORS 419A.255(1)(b) and (2)(b) provides a list of parties for which the record of the case and the supplemental confidential file are "open to inspection." This includes "[t]he judge of the juvenile court and those acting under the judge's direction" in addition to "[a]ny other person or entity allowed by the court pursuant

to ORS 419A.258." Again, these provisions regard the juvenile court and parties acting in connection with the juvenile matter *related to the ward*, and mother is not the ward in this action.

However, DHS argues that ORS 409.225—not ORS 419A.255—should control the disclosure of the records because DHS possesses the records, not the court. DHS advances a "right for the wrong reason" argument that ORS 409.225 makes the records confidential unless an exception is met.[2] That statute provides:

> "In the interest of family privacy and for the protection of children, families and other recipients of services, the Department of Human Services shall not disclose or use the contents of any child welfare records, files, papers or communications that contain any information about an individual child, family or other recipient of services for purposes other than those directly connected with the administration of child welfare laws or unless required or authorized by ORS 419A.255 or 419B.035. The records, files, papers and communications are confidential and are not available for public inspection. General information, policy statements, statistical reports or similar compilations of data are not confidential unless such information is identified with an individual child, family or other recipient of services or protected by other provision of law."

ORS 409.225(1) (2019). Specifically, DHS claims that it can use mother's juvenile records in the dependency matter involving her child because it is "directly connected with the administration of child welfare laws." *Id.*

That argument requires us to read ORS 419A.255 in concert with ORS 409.225(1) to identify the nature of the privilege at issue and whether or not it applies to the adult mother's juvenile records in a separate juvenile court proceeding involving her daughter. This task extends our work in *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 20 P3d 837, *rev den*, 332 Or 518 (2001), where we determined

---

[2] We can affirm a "ruling on appeal, even if the trial court's legal reasoning for the ruling was erroneous, if another legally correct reason and, to the extent necessary, the record developed in the trial court support the ruling." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) (quoting *State v. Rogers*, 330 Or 282, 295, 4 P3d 1261 (2000)).

that ORS 409.225(1) must be read along with ORS 419A.255 because the latter statute is cited in the former. *Kahn* understood ORS 409.225 as applying to DHS records in the possession of DHS; under that statute, such records are confidential but not privileged. However, *Kahn* found that a certain type of juvenile record—so-called "history and prognosis" records—were privileged generally under ORS 419A.255 regardless of their location. *Kahn*, 173 Or App at 141-42. Thus, even "history and prognosis" records solely in the possession of DHS would be privileged.

Under *Kahn*, both parties agree that mother's juvenile records are privileged and could not be used. However, the language of ORS 419A.255 has changed since our decision in *Kahn*. Mother has staked the claim that *Kahn* continues to control the interpretation of these statutes by privileging all "history and prognosis" information contained in DHS records; DHS responds that *Kahn* no longer grants a broad privilege for history and prognosis records generally because of the 2013 amendments to the relevant statutory sections.

The defendants in *Kahn*, which was a wrongful death action, sought the production of SCF (now DHS) records that were in the possession of the plaintiff's legal counsel. *Kahn*, 173 Or App at 130. They argued that they were entitled to discovery of those records under ORCP 36 B(1) and that ORS 409.225 did not prohibit their disclosure. *Id.* at 131. Defendants understood ORS 409.225 to prohibit SCF from disclosing its own records and not other parties who were in possession of such records.

In *Kahn*, we considered the threshold question of whether, as a matter of law, there was a privilege against the discovery of SCF records under ORS 409.225 or any other statute. We determined the legislature's intended meaning of the statute by first looking at its text and context by following the analysis set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). ORS 409.225 provides for DHS's use of records:

> "In the interest of family privacy and for the protection of children, families and other recipients of services, the Department of Human Services shall not disclose or use

> the contents of any child welfare records, files, papers or communications that contain any information about an individual child, family or other recipient of services for purposes other than those directly connected with the administration of child welfare laws or unless required or authorized by ORS 419A.255 or 419B.035. The records, files, papers and communications are confidential and are not available for public inspection. General information, policy statements, statistical reports or similar compilations of data are not confidential unless such information is identified with an individual child, family or other recipient of services or protected by other provision of law."

ORS 409.225(1) (2019).[3]

We interpreted the foregoing language to establish the requirements relating to the disclosure of DHS records by DHS. *Kahn*, 173 Or App at 138-39. The second sentence of subsection (1) makes such records generally confidential. However, as we said in *Kahn,* this directive is supplemented by, and an exception is provided in, the first sentence of subsection (1), which expressly prohibits DHS from disclosing or using such records except "for purposes *** directly connected with the administration of child welfare laws or unless required or authorized by ORS 419A.255 or ORS 419B.035." *Kahn*, 173 Or App at 137-38. We found no authority under the statute for the disclosure of the records by plaintiff's counsel to defendants, although we did determine that they were not invulnerable to discovery under ORCP 36 B(1) because we did not read ORS 409.225 as privileging DHS records. Therefore, the confidential records could be subject to discovery. However, we concluded that the related statutes cited in ORS 409.225(1) regard the disclosure of juvenile records generally under ORS 419A.255, and the requirements for the confidentiality of child abuse reporting records under ORS 419B.035. *Kahn*, 173 Or App at 137-40. We interpreted ORS 419A.255(2) to mean "that records—including [DHS] records—containing information about a child's medical, psychological, and personal and family background and predicted future condition or status were privileged[.]" *Id.* at 141-42. Therefore, we concluded

---

[3] ORS 409.225 has been amended since *Kahn*, but those changes do not alter the analysis here.

that given the omission of the term "privileged" from ORS 409.225, DHS records are not privileged unless they are also records relating to a child's history and prognosis as defined under ORS 419A.255. *Id.* at 142.

The statutory language we relied on in *Kahn* was found in the former version of ORS 419A.255 (1997):

"(2)  *Reports and other material relating to the child's or youth's history and prognosis are privileged* and, except at the request of the child or youth, shall not be disclosed directly or indirectly to anyone other than the judge of the juvenile court ***.

"(3)  Except as otherwise provided in subsection (7) of this section, no information appearing in the record of the case or in reports or other material relating to the child's or youth's history or prognosis may be disclosed to any person not described in subsection (2) of this section without the consent of the court, except for purposes of evaluating the child's or youth's eligibility for special education as provided in ORS chapter 343, and no such information may be used in evidence in any proceeding to establish criminal or civil liability against the child or youth, whether such proceeding occurs after the child or youth has reached 18 years of age or otherwise, except for the following purposes:

"(a)  In connection with a presentence investigation after the guilt of the youth has been admitted or established in a criminal court.

"(b)  In connection with a proceeding in another juvenile court concerning the child or youth or an appeal from the juvenile court."

ORS 419A.255(2), (3) (1997) (emphasis added). In 2013, the legislature changed the phrasing to enumerate the locations of these records in the "supplemental confidential file" or the "record of the case":

"Reports and other material relating to the child, ward, youth or youth offender's history and prognosis *in the supplemental confidential file or record of the case* are privileged and, except at the request of the child, ward, youth or youth offender, shall be withheld from public inspection."

ORS 419A.255(2)(a) (2013) (emphasis added).

In contrast to the former version, the amendments to the statute specify that the privilege extends to material about the youth's "history and prognosis in the supplemental confidential file or record of the case." ORS 419A.255(2)(a) (2013). We must now address the consequence of these statutory changes on *Kahn*'s holding to determine if DHS records related to history and prognosis information generally continue to be privileged.

Our interpretation of a statute is governed by *Gaines*, 346 Or at 171-72. The first and most important step is an examination of the text and context. This is followed by a consideration of the legislative history if it is useful for the court's analysis, and we must determine its "evaluative weight." *Id.* If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty. *Id.* at 172.

The legislature changed the language of the statute to identify the location of "history and prognosis" information in either "the supplemental confidential file or the record of the case." ORS 419A.255(2)(a) (2013). This is a significant narrowing of the language that we relied on in *Kahn*. Mother argues that the legislative history demonstrates that the intent was to leave the privilege intact to cover all "history and prognosis" DHS records. Indeed, testimony before the Judiciary Committee by a representative of the Oregon Law Commission (OLC) demonstrated an intent to clear up the confusing language used to describe the so-called "social file," which would be termed the "supplemental confidential file" in the amended statute. That same testimony mentioned a desire by the commission to continue the "history and prognosis phrasing that caselaw has so developed." Audio Recording, Senate Committee on Judiciary, SB 622, Apr 10, 2013, at 16:20 (comments by Wendy Johnson) https://olis.oregonlegislature.gov (accessed Nov 24, 2021). Furthermore, the OLC report submitted to the committee makes its objective explicit for the new provisions to maintain the strength of the privilege. For example, the proposed amendment to subsection (2)(a)

> "provides that 'history and prognosis' reports and material will continue to be privileged—whether maintained in the supplemental confidential file or whether they ultimately become part of the record of the case. Attaching 'history and prognosis' material to a motion will not make the material lose its privileged status. The work group found it very important to keep this material privileged to preclude public access to these sensitive records."

Oregon Law Commission, Juvenile Records Work Group Report 14 (2013). The testimony and report make clear the legislative intent to demarcate both the legal file and the supplemental confidential file as the juvenile court records. Indeed, the very language of the statute demonstrates this intention.

Because the legislative history offered here neither reveals a latent ambiguity in the words nor contradicts our understanding of the import of the words themselves, the text conveys its plain meaning, which is that "history and prognosis" information found in the supplemental confidential file or the record of the case is privileged—not all "history and prognosis" information contained in DHS's files. Our interpretive task, however, does not end there. We must consider the "history and prognosis" information that is located in the juvenile court files in addition to other places such as DHS's files.

ORS 419A.252(5) defines the materials in the supplemental confidential file that "includes reports and other material relating to the child, ward, youth or youth offender's history and prognosis, including but not limited to reports filed under ORS 419B.440." Furthermore, the "record of the case" includes such items as the summons, petitions, and "affidavits and other papers that are filed with the court, including supporting documentation." ORS 419A.252(4). Other statutes require that DHS provide its records for inclusion in the supplemental confidential file and court file. *See* ORS 419B.440.

ORS 419A.255(2)(a) references a broad range of materials that can qualify for the privilege. It would contradict the plain meaning of that language if the privilege could be defeated by finding the same materials in duplicate

from the originating source such as DHS's files. Therefore, we interpret the statute to mean that if any "history and prognosis" material is located in either the supplemental confidential file or the record of the case, the privilege attaches to this material, and it applies regardless if these same materials exist in duplicate elsewhere. The narrow issue in this case does not call upon us to delineate the full range of instances when the privilege would apply, or how it might be waived. Here, DHS sought to disclose the material; regardless of what other situations and actors may or may not fall under the statute's ambit, DHS clearly does. And DHS cannot defeat the privilege because the particular report or other material relating to the ward originated from its own files that it still possesses. By the same token, if the material that DHS seeks to disclose is not "history and prognosis" information found in the supplemental confidential file or the record of the case, it is not privileged for the purposes of ORS 419A.255, although it might still be confidential under ORS 409.225(1).

Here, DHS, as the proponent of the records, has not demonstrated that the records at issue overcome the privilege codified in ORS 419A.255. DHS had the burden to show that the records were not (1) history and prognosis information and (2) that they were not located in the supplemental confidential file or record of the case. The record here fails to establish either. Accordingly, the trial court erred in ordering disclosure.

Reversed and remanded.