Argued and submitted March 1, reversed and remanded September 28, 2022, petition for review allowed February 9, 2023 (370 Or 740) See later issue Oregon Reports

In the Matter of C. P.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

C. P.,
*Appellant.*

Multnomah County Circuit Court
19JU08303;
Petition Number 191108028;
A173762

518 P3d 598

Youth appeals a juvenile court order granting the crime victim's ORS 419A.258 motion to inspect and copy a psychological report and juvenile court counselor's report related to youth. Those reports were contained in the supplemental confidential file of the juvenile court. The juvenile court determined that the victim's constitutional right to be heard at youth's delinquency disposition gave rise to a "legitimate need" for the victim to inspect the contents of the file. *Held*: The juvenile court erred by granting the victim's request to inspect and copy the reports because victim did not establish a "legitimate need" under the statute.

Reversed and remanded.

Amy Holmes Hehn, Judge.

Christa Obold Eshleman argued the cause for appellant. Also on the brief was Youth, Rights & Justice.

Gregory A. Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Reversed and remanded.

**MOONEY, J.**

The Oregon Constitution provides that the victim of a crime has the right "to be heard at the * * * juvenile court delinquency disposition." Or Const, Art I, § 42(1)(a). The Juvenile Code provides that "reports and other material relating to the * * * adjudicated youth's history and prognosis in the record of the case or the supplemental confidential file are privileged and, except at the request of the * * * adjudicated youth, shall be withheld from public inspection except that" those files may be "open to inspection" by certain designated individuals or by "any other person" having a "legitimate need" to inspect the file, as determined by the juvenile court pursuant to ORS 419A.258. ORS 419A.255(2)(a), (b)(O); ORS 419A.255(1)(Q).[1] Crime victims are not listed among the designated individuals to whom such privileged materials may be open to inspection.

The question presented by this case is whether the juvenile court erred when it granted the victim's ORS 419A.258 motion to inspect and copy a psychological report and a juvenile court counselor's (JCC's) report related to youth, which are contained in the supplemental confidential file of the juvenile court, based on its determination that the victim's constitutional right to be heard at youth's delinquency disposition gave rise to a "legitimate need" for the victim to inspect the contents of youth's supplemental confidential file. We conclude that the juvenile court erred insofar as it granted the victim's request to inspect and copy the "Psychological Report" prepared by Molly Persky, PsyD, and the "Report to Court" prepared by youth's JCC. Accordingly, we reverse and remand the order regarding disclosure of records.

## I.   BACKGROUND

The facts relevant to the issue before us are not disputed. The victim rented a room in youth's home. Youth entered her room while she slept and then struck her in the

---

[1] ORS 419A.255 and ORS 419A.258 were both amended, effective January 1, 2022, after the event that led to the filing of the petition in this case. The changes do not affect our analysis in this case, and we cite the current versions of the statutes in this opinion.

head with a mallet. In the juvenile court, youth admitted to that conduct and also admitted that if he had been an adult at that time, his act would have constituted second-degree assault. The juvenile court accepted youth's admissions and, based on those admissions, adjudicated youth to be within the court's delinquency jurisdiction.

Before the dispositional hearing, the victim filed a motion under ORS 419A.258 requesting to inspect and copy portions of the juvenile court supplemental confidential file, including a psychological evaluation and a counselor's report pertaining to the youth. She argued that she needed to inspect those records "to facilitate [her] meaningful participation" in the case. Specifically, relying on both Article I, section 42, of the Oregon Constitution and ORS 419C.273, she argued in the juvenile court that disclosure was necessary to preserve her right as a crime victim to "meaningfully participate" in critical stages of the juvenile court proceedings, including disposition. She argued that, as a crime victim, her "constitutional right to participate meaningfully in the prosecution of her abuser trumps state statutes that interfere with such participation." She also argued that a "right of a crime victim to discovery in her offender's criminal case is necessary to fulfill the wishes of the voters" who passed the ballot measure that added Article I, section 42, to the Oregon Constitution.

More specifically, the victim asserted that disclosure would help her to "rebut" youth's anticipated reliance on matters reflected in the psychological report to mitigate his responsibility for the assault and to request release to his parents rather than confinement at an Oregon Youth Authority facility. She also argued that she had an important interest in assessing whether information within the report concerning the assault was "accurate" to "ensure the safety of the community and the victim." In her view, disclosure pursuant to a protective order would sufficiently balance her interests and the interests of the public with youth's interest by allowing limited disclosure structured to safeguard youth's privacy interests.

Youth opposed the victim's motion, arguing that the requested reports are confidential and privileged under

ORS 419A.255. He argued that the records contain details about mental health diagnoses and prescribed medications as well as matters ranging from youth's childhood struggles with Attention-Deficit/Hyperactivity Disorder (ADHD), toilet training, and bullying, to information about youth's parents, including divorce and custody issues and the parents' health and sobriety.

After a hearing and *in camera* review, the juvenile court granted the motion in part. It ordered the disclosure of the following specific records from the supplemental confidential file: police reports related to the underlying incident;[2] youth's psychological evaluation; and the JCC's report to the court. The juvenile court, in a thoughtful decision from the bench, began by stating:

> "I have carefully considered the materials provided by the parties. I find that the victim doesn't have a constitutional right *per se* to access to the records in the case file, because the listed rights under Oregon Constitutional Article I, Section 42(1), include specific and enumerated rights. And, I'm persuaded that those rights were limited for a reason.
>
> "And, so—but, it is accurate * * * that the victim has a right to be heard at any dispositional hearing, which is what we have coming up. And, * * * I agree with [the victim's counsel] that in order for that right of a victim to make a statement to be fully informed and is persuasive as the victim is entitled to it being, it needs to be an informed argument. And so I do view my analysis of 419A.258 through that lens."

The court further ruled that it would limit the victim's access to certain documents in the supplemental confidential file.

The juvenile court later issued a written order setting forth its findings regarding the relevant statutory interests under ORS 419A.258.[3] In considering youth's privacy interest, the court found that the "protective order adequately addresses the concerns of the Youth and his

---

[2] Youth does not challenge the court's order requiring disclosure of the police reports.

[3] The relevant provisions of ORS 419A.258 are set out and discussed below. 322 Or App at 61-62.

family about disclosure of records to others not legitimately involved in these proceedings." As to the victim's interest, it found that "the interests of the victim in this case are significant and legitimate" and it adopted the reasons stated by the victim's lawyer. The court also found that "[t]he interest of the public in safety are similar to the victim's safety needs and interests."

Youth appeals that order. On appeal, youth contends that the victim did not establish a "legitimate need" for the reports, as required by ORS 419A.258(7)(a), and that the juvenile court erred in determining otherwise. In youth's view, the context and legislative history of ORS 419A.258 demonstrate that the confidentiality of juvenile records is paramount to the rights of crime victims in juvenile proceedings. He also argues that the court's consideration of the victim's interest was predicated on the incorrect legal premise that, to effectuate the victim's constitutional "right to be heard," she had a right to "be fully informed" and to make an "informed argument" to the court, which, in turn, supported a "legitimate need" for disclosure. Lastly, youth argues that, "[i]f a victim's right to be heard is construed to include a general right to 'informed argument' by means of disclosure of [confidential information], this would confer a *de facto* right to discovery upon the victim[.]"

The state's response is multifold. It contends that we lack jurisdiction over this appeal, asserting both that the order granting the victim's motion is not appealable, and that, in any event, the appeal is moot because the records were disclosed as ordered. As for the merits, the state responds that the juvenile court did not err in allowing the victim access to youth's confidential records, and that the court correctly followed the governing statutory framework. Further, the state argues that the plain text of ORS 419A.258 demonstrates that the legislature intended for the interest of victims to be "on par with those of parties to a juvenile proceeding when it comes to the disclosure of confidential documents." As we explain, we conclude that we have jurisdiction over this appeal, it is not moot and, further, the juvenile court erred in ordering disclosure.

## II.   APPEALABILITY AND MOOTNESS[4]

We first consider whether we have jurisdiction over this appeal. In particular, we consider (1) whether the disclosure order is an appealable order, and (2) whether the disclosure of the contents of the supplemental confidential file have rendered this appeal moot.

Youth asserts that this court "has jurisdiction pursuant to ORS 419A.200 and ORS 419A.205(1)(d)." ORS 419A.200(1) provides that "a party to a juvenile court proceeding *** whose rights or duties are adversely affected by a judgment of the juvenile court may appeal therefrom." "For the purpose of being appealed," ORS 419A.205(1)(d) defines "judgment" to include "[a] final order adversely affecting the rights or duties of a party and made in a [juvenile] proceeding after judgment." Youth argues that the victim's access to portions of the supplemental confidential file adversely affects his right to maintain the confidentiality of that information.

The state counters that the order was stayed, with no adverse legal effect on youth's interests. The state also contends that the order is not final, and it points to a stipulated protective order that superseded the order as evidence of that. It argues, in other words, that because the order was later modified, it was not final to begin with. And in any event, the state argues that, even if the order was final and even if it adversely affected youth's rights, the issue is now moot because the confidential and privileged records have been disclosed.

The "fact that the court ruled on a motion" is not alone sufficient "to create an appealable order." *State ex rel Juv. Dept. v. Ortiz*, 187 Or App 116, 125, 65 P3d 1118 (2003). Whether the order was final and reviewable depends on whether it was "detrimental or unfavorable" to the youth's rights or duties. *State ex rel SOSCF v. Imus*, 179 Or App 33, 38-39, 39 P3d 213 (2002). "[T]o meet that standard, an order must effect a 'substantial change in the nature or degree' of the conditions established by a previous order of the juvenile

---

[4] We appreciate the additional briefing that the parties submitted on these issues at the court's request.

court *or must affect the rights or duties of a person by a ruling on a motion.*" *Ortiz*, 187 Or App at 124 (quoting *Imus*, 179 Or App at 38-39 (emphasis added)).

We conclude that the order from which youth appeals adversely affects him because it resulted in the disclosure of privileged information about him and his family that the court is required to withhold from public inspection unless an exception applies. The temporary stay of that order did not change its essential nature which was to provide copies of the requested reports in the supplemental confidential file to the victim's lawyer and to permit the victim to inspect those records. The disclosure order was final because it required disclosure of confidential and privileged records for the victim's use. The subsequent stipulated protective order added negotiated protective measures to the disclosure of those records, but it did not change the key purpose of the order, which was, again, to disclose confidential records to the victim. That order to disclose is appealable.

We now turn to the state's argument that this appeal is moot. The Supreme Court has stated, in general, that cases "in which a court's decision no longer will have a practical effect on or concerning the rights of the parties [] will be dismissed as moot." *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993). "An appeal is moot when resolution of the main issue in controversy will no longer have a practical impact on the rights of the parties." *Dept. of Human Services v. S. M. S.*, 281 Or App 720, 721-22, 383 P3d 991 (2016). It is undisputed that the victim continues to have access to the disclosed records through her lawyer. Resolution of whether the juvenile court properly ordered the disclosure of the records will have a practical effect on youth's rights because, at a minimum, it would require the victim's lawyer to return (or destroy) any wrongfully disclosed records, something that would safeguard youth's privacy in those records. The issue is not moot.

### III.  STANDARD OF REVIEW

Having concluded that we have jurisdiction over this appeal, we turn to the merits. The issue before us is one

of first impression and requires us to identify the appropriate standard of review. The parties assert that our review of the juvenile court's order disclosing portions of the supplemental confidential file to the victim should be for abuse of discretion. Youth cites no authority supporting application of that standard in the context of this case, but instead cites to an inconvenient forum case and notes that, when reviewing "the application of a balancing test," the trial court abuses its discretion when its view of the law is incorrect, or when its findings are not supported by the record, or when it strikes a "clearly unreasonable balance of the relevant factors." The state simply "agrees" that the applicable standard of review is for abuse of discretion.

We do not necessarily disagree that some aspects of a juvenile court's ruling on an ORS 419A.258 motion may be subject to an abuse-of-discretion standard of review. Certainly, some aspects of the statute require a juvenile court to make discretionary decisions. *See, e.g.*, ORS 419A.258(7)(b) (court "may" limit inspection and copying to certain documents). And, although we did so under a different statute, we applied an abuse of discretion standard when we reviewed a juvenile court's order requiring the state to disclose home studies of prospective adoptive families to the attorney representing the children to be adopted. *State ex rel SOSCF v. Williams*, 168 Or App 538, 540, 7 P3d 655 (2000).

But in this case, the parties' arguments raise a question of statutory construction, which is a legal question. Specifically, the question is whether a victim's right to be "heard" in a delinquency dispositional proceeding gives rise to a "legitimate need" to inspect a youth's supplemental confidential file within the meaning of ORS 419A.258(7)(a). That issue, which involves the interplay between the constitutional and statutory rights of crime victims and the statutory privilege that attaches to certain records filed in delinquency cases pursuant to ORS 419A.255, is one of the "construction and application of a statute" and the constitution that we review for errors of law. *Dept. of Human Services v. E. J.*, 316 Or App 537, 539, 504 P3d 1262, *rev allowed*, 369 Or 507 (2021).

To determine the meaning of a statute most likely intended by the legislature that adopted it, we engage in an analysis of the statute under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We "examin[e] the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011). To determine the meaning of a constitutional provision adopted by a vote of the people, we "examine the text, in its historical context and in light of relevant case law, to determine the meaning of the provision at issue most likely understood by those who adopted it, with the ultimate objective of identifying relevant underlying principles that may inform our application of the constitutional text" to the circumstances before us. *Couey v. Atkins*, 357 Or 460, 490-91, 355 P3d 866 (2015) (internal citations and quotation marks omitted).

### IV.   LEGAL BACKGROUND

To provide context for our analysis, we start with an overview of the law governing delinquency proceedings and juvenile court records together with the law governing a victim's rights in connection with such proceedings.

### A.   *Juvenile Delinquency Proceedings*

"[J]uvenile adjudications are not the legal equivalent of criminal prosecutions." *State ex rel Juv. Dept. v. Fitch*, 192 Or App 56, 64, 84 P3d 190, *rev den*, 337 Or 282 (2004). Although youth's conduct was criminal in nature, "the juvenile code provides for a different procedure for addressing that conduct." *State v. R. J. S.*, 318 Or App 351, 355, 506 P3d 1151, *rev den*, 370 Or 211 (2022) (internal quotations omitted). ORS 419A.255 is an example of "a different procedure for addressing" youth's conduct by establishing a records system for delinquency cases that anticipates and provides for portions of the official case record and files to be confidential and free from public inspection.

### B.   *Juvenile Court Records*

Juvenile court records—generally withheld from public inspection—are not organized or maintained in the same way as circuit court records in adult criminal cases,

which generally are open to public inspection. ORS 419A.255(1)(a) directs the clerk of the juvenile court to maintain two files for each case: a "record of each case" and a "supplemental confidential file." This case concerns reports maintained by the juvenile court clerk in the supplemental confidential file, which is defined to include "reports and other material relating to the *** adjudicated youth's history and prognosis" that are not "part of the record of the case" and "are not offered or received as evidence in the case." ORS 419A.252(5). The reports in question relate to youth's "history and prognosis" and, as such, they are "privileged" under ORS 419A.255(2)(a). *See also E. J.*, 316 Or App at 545 (stating information that relates to the "history and prognosis" of a youth is generally privileged, regardless of its location). We note that the juvenile court concluded that "[y]outh waived [his] privilege by making the evaluation available to the Court, the [District Attorney] and the [JCC] in the case by filing it in the supplemental confidential file." It is not clear what privilege the court was referring to, but youth did not assert privilege under OEC 504 or any similar privilege. The records at issue are privileged under ORS 419A.255(2)(a) because they relate to youth's history and prognosis and are maintained in the supplemental confidential file. Youth did not waive that privilege by filing the reports with the court. The opposite is true. The statutory privilege provided by ORS 419A.255(2)(a) attached upon that filing.

The statutory privilege is not absolute and, under ORS 419A.255(2)(a), although records "relating to the *** adjudicated youth's history and prognosis *** shall be withheld from public inspection[,]" the provision expressly authorizes access to those records by specifically identified persons. That list of authorized persons is not short and, importantly, crime victims are not among them. The statute does, however, permit "any other person or entity" to inspect such records as "allowed by the court pursuant to ORS 419A.258." ORS 419A.255(1)(b)(Q), (2)(b)(O). Consequently, other persons, including victims, may be entitled to inspect otherwise confidential juvenile court records, provided the criteria contained in ORS 419A.258 are satisfied.

The provisions in ORS 419A.255(1)(b)(Q) and (2)(b)(O), and ORS 419A.258, allowing "any other person" to request

court-ordered access to confidential juvenile court records, added by the legislature in 2016, were originally discussed in the context of a 2013 bill drafted by the Oregon Law Commission (OLC), as part of a comprehensive reform of the Juvenile Code. Or Laws 2013, ch 417, § 3 (SB 622). The OLC report on SB 622 advised,

> "Like most states, Oregon has long had law and policies that generally make juvenile court records confidential, and access to them is highly restricted."

Exhibit 8, House Committee on Judiciary, SB 622, May 7, 2013, at 2 (OLC 2013 Juvenile Records Workgroup Report). The report went on to state:

> "Oregon statute specifically prohibits public access to juvenile court records. See ORS 419A.255. The work group intended to make no changes to public access rights. That is, the bill neither is intended to expand nor increase public access. Rather, the focus of the work group's work was clarifying access rights of parties in juvenile cases."

*Id.* at 3. The report also addressed specific concerns related to psychological reports, noting that many Oregon judges understood that children's psychological reports should not be provided even to their parents because

> "such reports contain highly personal information—often concerning sexual abuse and behavior details, medical and mental health information—that if disclosed to others or placed on the Internet would be highly humiliating and damaging to children. Such material would detrimentally affect their future."

*Id.* at 13. But because the information contained within a child's psychological evaluation might be needed by those taking care of the child, the "any other person" provisions were eventually added to allow those caretakers the ability to request, and the court the flexibility to permit, such access when appropriate. Those provisions were added in 2016. Or Laws 2016, ch 95, §§ 7, 9 (HB 4074).

C.  *Motion to Inspect or Copy Records*

ORS 419A.258 sets forth the procedure by which motions to inspect and copy juvenile court records filed by those not specifically listed in ORS 419A.255 are addressed.

After the court determines that the motion complies with the statutory requirements, it may set a hearing and it must conduct an *in camera* review of the requested records. ORS 419A.258(4), (5). After that, the court must weigh the following interests as it decides whether to grant or deny the motion:

> "(a)  The privacy interests and particular vulnerabilities of the * * * adjudicated youth, or of family members, that may be affected by the inspection or copying of all or part of the record of the case or the supplemental confidential file;
>
> "(b)  The interests of the other parties to, or victims in, the juvenile court proceeding;
>
> "(c)  The interests of the person or entity filing the motion; and
>
> "(d)  The interests of the public."

ORS 419A.258(6). The court, *in granting* such a motion:

> "(a)  *Shall allow inspection or copying only as necessary to serve the legitimate need* of the person or entity filing the motion, as determined by the court;
>
> "(b)  May limit inspection or copying to particular parts of the record of the case or the supplemental confidential file;
>
> "(c)  May specify the timing and procedure for allowing inspection or copying; and
>
> "(d)  Shall make protective orders governing use of the materials that are inspected or copied."

ORS 419A.258(7) (emphasis added). Thus, by its terms, the statute authorizes a disclosure order only insofar as it serves the movant's "legitimate needs."

D.  *Crime Victims' Rights*

Article I, section 42, of the Oregon Constitution, was added to the constitution by Ballot Measure after a vote of the people in 1999. It was amended, again by a vote of the people, in 2008. That constitutional provision begins with this explanation:

"To preserve and protect the right of crime victims to justice, to ensure crime victims a meaningful role in the criminal and juvenile justice systems, to accord crime victims due dignity and respect and to ensure that criminal and juvenile court delinquency proceedings are conducted to seek the truth as to the defendant's innocence or guilt, and also to ensure that a fair balance is struck between the rights of crime victims and the rights of criminal defendants in the course and conduct of criminal and juvenile court delinquency proceedings, the following rights are hereby granted to victims in all prosecutions for crimes and in juvenile court delinquency proceedings[.]"

It then sets forth a list of rights, including, as relevant here,

"(a)  The right to be present at and, upon specific request, to be informed in advance of any critical stage of the proceedings held in open court when the defendant will be present, and to be heard at the *** juvenile court delinquency disposition.

"(b)  The right, upon request, to obtain information about the conviction, sentence, imprisonment, criminal history and future release from physical custody of the criminal defendant or convicted criminal and equivalent information regarding the alleged youth offender or youth offender[.]"

In carrying out those constitutional provisions, ORS 419C.273 requires that victims of acts charged under the juvenile delinquency code are "informed in advance of critical stages of the proceedings *** when the youth or adjudicated youth will be present[,]" and reinforces the victim's rights to advance notice to appear and to "reasonably express any views relevant to the issues before the court."

The Oregon Supreme Court, in the context of reviewing a crime victim's claim that her right to be heard at sentencing in a criminal case was violated, considered the scope of that right, analyzing it by reference to a defendant's "right of allocution," which it deemed "similar" to a crime victim's right to be heard at sentencing. *State v. Ball*, 362 Or 807, 817, 416 P3d 301 (2018). Although the context in which the scope of the victim's right to be heard here is different, the nature of that right is nevertheless the same. It is noteworthy in *Ball* that, in addressing whether the victim's right to be heard was violated when the court interrupted

and then terminated the victim's impact statement, the focus was on the victim's right to make a statement. *Id.* at 809. The court held that although the trial court could not terminate the victim's relevant statement altogether, her right to be heard was not without limits. *Id.* at 822. "[T]he trial court's interruptions of appellant's statement, which were for the permissible purpose of having appellant focus on the charged crimes and her own experiences with the defendant, did not violate appellant's right to be heard." *Id.* at 809.

A victim's participatory right under the Oregon Constitution, therefore, is limited. It is what the plain terms of the constitution and implementing statute suggest: a right to be "heard," that is, a right to "reasonably express any views relevant to the issues before the court." ORS 419C.273. It does not encompass a right to discovery, a right to present evidence, a right to cross-examine the adjudicated youth, or the power to, in effect, control the prosecution of the case against the youth. As *Ball* makes clear, it is a right that is analogous to the right of allocution—a limited right to be heard on matters relevant to the issues before the court.

## V.   ANALYSIS

Having provided a survey of the applicable law, we turn back to the specific legal question before us. That question, as noted, is whether the victim's statutory and constitutional right to be heard at youth's dispositional hearing gave rise to a "legitimate need"—as that term is used in ORS 419A.258(7)(a)—to inspect the records that the juvenile court ordered disclosed. Given the limited scope of a victim's participatory rights, the juvenile court correctly acknowledged that the victim's constitutional right to be heard does not confer on her a "right *per se* to access" youth's supplemental confidential file. The juvenile court also correctly observed that ORS 419A.258(6) required it to weigh the victim's constitutional and statutory interests along with the interests of the youth, his family members, and the public in deciding whether to grant a motion to inspect or copy confidential and privileged records. We do not agree, however, that the court's balancing of those interests comports with

the correct legal construction of the pertinent and overlapping constitutional and statutory provisions.

The juvenile court's conclusion that the protective provisions of the order adequately protect the privacy interests of youth and his family by prohibiting disclosure "to others not legitimately involved in these proceedings," and its finding that the "interests of the victim in this case are significant and legitimate," are not the same as a finding that the victim has a "legitimate need" for the requested reports as required by ORS 419A.258(7)(a). A person legitimately involved in the legal proceeding may or may not have a legitimate need for access to records contained in the supplemental confidential file that are, by definition, privileged. ORS 419A.255(2)(a). We do not agree that the confidentiality of juvenile records is, as a matter of law, paramount to the rights of crime victims in juvenile proceedings, but a proper construction of the legal provisions involved here required the court to resolve the competing interests reflected in this record, in favor of youth and his family.

On these facts, the question is whether the victim's right to participate at the dispositional hearing, and her desire to prepare for that participation, constitutes a "legitimate need" justifying the disclosure of youth's confidential records to her. Although the victim's rights to participate and to prepare are unquestionably legitimate, they do not give rise to a "need" to inspect the requested records.

Unless the legislature indicates otherwise, we give words of ordinary usage their plain meaning. *PGE*, 317 Or at 611. The ordinary meaning of "need" as a noun is "necessary duty." *Webster's Third New Int'l Dictionary* 1512 (unabridged ed 2002). And the word "necessary" means "whatever is essential for some purpose." *Id*. at 1510. We acknowledge that Webster's also describes the noun "need" as "*a want* of something requisite, desirable, or useful." *Id*. at 1512 (emphasis added). But given the legislature's use of the modifier "legitimate," which means "genuine," and the overall context, discussed below, we conclude that the "need" must be something necessary. The use of the word "need" therefore signals the legislature's intention that a party seeking disclosure must demonstrate something more than that

disclosure would be beneficial to them; they must demonstrate that disclosure is *necessary* under the circumstances.

Context corroborates this intent. Article I, section 42, does not provide crime victims with a right of discovery. Article I, section 42(1)(b), confers on crime victims the right to request and "obtain information about the conviction, sentence, imprisonment, criminal history and future release from physical custody" of the "youth offender." Article I, section 42(1)(e), provides for the right of crime victims "to have a copy of a transcript of any court proceeding in open court, if one is otherwise prepared." It is significant to us that the right to "obtain information" is limited to information about discrete events or points in the juvenile justice process itself (conviction, sentence, imprisonment, release) and that the right to "have a copy" pertains solely to transcripts of proceedings that occur in "open court." Neither Article I, section 42(1)(b), nor Article I, section 42(1)(e), provide a right to copies of confidential or privileged records or records about events that do not occur in open court, such as psychological evaluations. Article I, sections 42(1)(b), and (e), do not mention any "need" that a victim might have for information or for copies of hearing or trial transcripts, but we infer from the explanation of the purpose of Article I, section 42, in general, as adopted by a vote of the people, that those rights were included to, among other things, "ensure crime victims a meaningful role in the criminal and juvenile justice systems[.]"

Context reflects that the legislature did not view victims as having a "need" to inspect confidential juvenile files. It is significant to our analysis that crime victims are not among those to whom access is automatically built into the statutory scheme, because that shows the legislature's intent that a crime victim must affirmatively establish a legitimate need for the records. It is likewise significant to our analysis that crime victims are not given the status of "party" by any constitutional or statutory provision.

The victim's argument that she needed access to the reports to help assess the accuracy of information contained within those reports does not square with the manner in which evidence is tested by the ebb and flow of

examination and cross-examination engaged in by the parties in the course of a trial or hearing. Because the victim is not a party, neither she nor her lawyer would participate in testing evidence through examination or cross-examination and her asserted "need" for that purpose diminishes. The legislative history, previously described, confirms that intent. The concept of necessity is informed, for example, by the OLC report considered by the legislature as it debated adding ORS 419A.258 to Oregon's Juvenile Code. That report brought focus to Oregon's long-standing treatment of juvenile court records as confidential, tightly restricting access to such records *to parties* with a need to have access, because of the highly personal nature of such records and the concern that public release may be harmful and may potentially be at odds with the purposes of the juvenile justice system. The legislative history supports the conclusion that the "any other person" provisions of ORS 419A.255 and ORS 419A.258 were intended to expand access to confidential records beyond the parties and those responsible for the youth's welfare only when a legitimate need is shown.

Given the requirement of "legitimate need" understood through our analysis and construction of ORS 419A.258, in conjunction with our construction of Article I, section 42, the victim's showing in this case fell short. The state's argument, and the court's finding, that the victim's access to privileged reports concerning youth's history and prognosis would "facilitate" the district attorney's work with the victim, while perhaps true, misses the point of necessity. That the information, in the hands of the victim, might in theory be helpful to the prosecutor does not establish that the victim has a "legitimate need" for it.

ORS 419A.258(6) requires the weighing of competing interests before allowing any request to inspect, and even where the court properly balances the interests in favor of granting access, it may only grant access "as necessary to serve the legitimate need of the person or entity filing the motion." Where, as here, the motion to inspect concerns privileged records and the victim, as the moving party, was not able to identify a legitimate need for those records, the court must maintain the privilege and deny the motion. Even if the balance might properly tip in favor of disclosure,

a conclusion we do not reach on this record, the absence of a legitimate need nonetheless results in nondisclosure. The court erred as a matter of law when it granted the victim's motion.

Reversed and remanded.